We have four cases this morning, the first two are consolidated for argument, both in Re. US, number 24-1566 and 25-127. Ms. McNamara. Good morning. Courtney McNamara on behalf of the U.S. International Trade Commission. Could I understand a little bit better about what happened here? As I understand it, in the mattress case, the opinion was released without an opportunity for the parties to object to the disclosure of any confidential information, and afterwards there was a motion by the United States to redact information from the opinion. Was there any objection by the private parties to any of the information that was disclosed in the opinion? No, actually they joined. It was a joint motion. I understand, but the motion was based on the notion that under the ITC practice, questionnaires are automatically confidential. What I'm asking, was there any objection to specific information that was disclosed in the opinion? It's difficult for us because as I understand it, the briefs on confidentiality in the Court of International Trade were confidential. We don't have access to them. They're not in the appendix. The motion was, and it does have the information, again, it was a joint motion, and so it was explained in the attachment what all of the precise information was. The companies didn't file their own motion or separately object to anything in particular, but they did, they did all, all the parties consented that this was, that the information should all be treated as proprietary. Okay, so there was no objection to particular information. Actually, that's, that's not true. There is some, there was some, there wasn't a separate motion, but there was some information that was, for example, the court had spoken in, at the hearing about some information and counsel was there for that, but then what the court disclosed was far more specific information. So there was objection to specific information in the motion? Yes, and that was in the attachment. In the mattress case? Yes, and that was in the attachment. But in the phosphate case, there was no objection to specific information in the opinion? No, and if I could just make... You mean yes? I mean yes, sorry. I apologize, Your Honor. And if I could just make a quick point about the, the mattresses case, is most of the information that was disclosed did not involve parties to the litigation, so they would not be there and have an opportunity to object, particularly the purchasers, because purchasers can't be interested parties that participated in the proceedings below. By definition, they can't participate in the litigation, so they had no opportunity to  In the phosphate case, that's not true, is that right? In the, it's actually that, it's true that in the phosphate case, there was some information that was released, or that was... Proposed to be released. Yes, exactly. There was some information that, in the record, was rejected from, as being entitled to continued protection under the, in the court's March order, and what's important there is that there are two domestic producers that are a party to the case, there is one that is not. So the court was proposing to release that party's information as well. And then in the... But did the non-parties have an opportunity to object in the phosphate case or to participate in the hearing? Yes, they did. The parties to the litigation participated in the hearing, and they submitted their own responses, and they, I apologize. You said that there were, there was information from two parties, and also information from a non-party. Right. Did that non-party get notice? No. The parties to the litigation did participate, and they filed their own motions. And they had no objection to the information. Oh, no, they did, they did. One party in particular requested that its information continue to be treated as proprietary. The other consented to some being disclosed, but asked for other information to be continued to be protected. And then in the July order, the commission asked for five items to be redacted, three of which related to one of the parties to the proceedings and in the litigation, who confirmed that their information was business proprietary information, and they wanted it to continue to be protected. The other information involved purchasers that, again, can't be parties to the litigation. So they would have no opportunity to be heard or object. Can I ask a very mundane, but nevertheless necessary question? On the mattresses case, the order of December 19th that disclosed all of it into the public was then followed by a letter and a motion, and then an appeal from you more than 60 days after December 19th. How do we have jurisdiction? It continues to be capable of repetition. In fact, this is the timing question, but there's a 60-day clock on appeals in government cases. Your appeal was within 60 days of the January refusal to alter the opinion, and I think you need to say that request to redact after the fact fits into some separately appealable order category, or told the timing on the December 19th one, and I have not, nobody has talked about this, and I haven't been able to straighten it out myself. I apologize. Just so that I understand, the court's concern is that the appeal time ran from the time of the disclosure or the time that the order was issued? Well, the December 19th order was a final judgment in the case, right? Correct. So that starts a clock on an appeal. That's the order that did the harm that you're complaining about. You didn't appeal within 60 days of that. Instead, you filed a letter, and the judge said, don't do it by letter, do it by motion, but not under one of the rules 59, 60, whatever, that can toll the running of the clock on an appeal. Maybe it's a rule 60 motion, or maybe not, whose denial would then be independently appealable? That's what I'm trying to understand. Well, the parties initially thought that this was an error. They thought it was an oversight by the court, and so they waited and thought that the court would then engage with them, and the court didn't, so they went from the... But you don't have anything on the legal side to explain why your, what is it, a March notice of appeal? Something like that. Why that was, in fact, timely to attack either the denial of the redaction or the document that actually produced the harm, since it was, you know, a sui sponte put into the public domain, and that can't be, that bill can't be unwrung. Right. So you filed the appeal within 60 days of the denial of the motion to redact? Yes. That's what we, so we, I'll confess, we did not, we have not looked at this or considered it, so I'm happy to follow up with briefing, but I would, yes, this... Can I ask just the question, is there any issue that you're presenting to us that we can't decide fully in the phosphate case, so that even if we were to conclude you just don't have a timely appeal in the mattress case, we can decide all the issues? I mean, obviously, this opinion, the 719th opinion has put all this into the public domain for a long time. You can't ignore that. You're trying to get some rules of the road on a going forward basis. Can all of that be done in the phosphate case? Yes, it has overlapping issues. I mean... Well, is that true, because it seems to me there is one issue in the mattress case which is not presented in the phosphate case, and that is the possible error in refusing to give the parties an opportunity to address the confidentiality issue before issuance of the opinion. That's true, but that has not repeated, but the underlying issue as to whether the court has the authority to do phosphate release information that was treated as business proprietary before the commission is still... That underlying issue in how to interpret 1516 AB2 is very much an issue in the phosphate case. Yes, but in the mattress case, are you raising the failure of the court to give the parties an opportunity to address the confidentiality issue before issuance of the opinion? That is certainly a concern. We didn't... You haven't briefed that. No, we did not. We did not brief that, but it is certainly a concern, as was echoed by the amicus briefs, and particularly the ITC-TLA. They specifically echoed that, that this concern that information would be disclosed without any notice or opportunity to be heard. Okay. So, just... I lost a lot of questions on that. Just coming back so I'm clear about the objections by the parties that there is information that's involved here by non-parties, and the non-parties did not object in the mattress case. They did not file, participate in any of the motions to redact, right? That's correct. It was parties to the litigation. And the parties in litigation did object to some specific information? It was all a joint motion. So, the justification was all included in it. So, it's hard to specifically parse it out and say that they objected to this, but not that. Here's the figure of sales, and that information was confidential, or was it all addressed to the general theory that the submission of the questionnaires should result in a complete confidentiality designation without regard to the particular information? No, this was very much... It went through... Did it go to specific information? It did, yes. It very much did. And in the phosphate case? Yes. And are there issues there about specific information also? Yes. Similar to what we did in the mattresses case, which had that appendix B or attachment B to the motion to redact, it went through point by point and explained. We did something similar in the fertilizer case. The problem that I'm seeing right now is, what were the specific issues raised in the reasoning on appeal? I mean, I don't recall that in the mattress brief, none of the private parties appealed. So, I don't recall in the mattress brief that the government objected to any specific information, correct? That... It was recounted what happened, but yes, it did not include the same... So, the only... It's on the record, but... But the only issue raised on appeal was whether questionnaires generally need to be treated as confidential, not the specific... Not the release of specific information. The specific information was included in the appendix and on the record and discussed, but it... But it wasn't the subject of a brief. It... Not specifically, because from the commission's view, the issue here is a legal one. I understand. I'm trying to understand what the issue is before us. The only issue that you briefed in the mattress case is the specific issue of whether questionnaires generally should be treated as confidential, right? Yes. We addressed that the commission's practice, we believe, is lawful and appropriate. Okay. But even that, do I understand right, has two parts. One is, does the CIT have authority to declassify? And the second is whether the ITC's own treatment of all questionnaire responses is proper, right? Both are at issue, right? Right. Right. Very much so. And the... Are both at issue in the mattress case? The second issue is only in the phosphate case, isn't it? Yes. The... No, it was related because where the information came from in the mattress case was also questionnaire. But the key issue... I mean, if we were to decide, I think, Contrary, your position is that the CIT does not have authority under that second sentence in 1516a to make information public that the commission properly treated in its own house as confidential, right? And if we were to disagree with that, there would then be the question whether the questionnaire responses was properly treated as confidential in the ITC proceeding or, I guess, both of that and whether the way that the CIT exercised its discretion, now by assumption, under 1516a was an abuse of discretion. Yes. Yes. So, it is... The issue... We believe this is capable of being decided under 1516a, that the court does not have the authority to release publicly the information in the way that it did in the mattresses and the way that it's doing here and also doesn't have the authority to order the commission to disclose information and change designations in its record. I'm sorry, one more housekeeping question. Okay. Going back to the mattress appeal, I had thought that perhaps in your blue brief you made a separate argument that even if the court were to disagree with you about how to read 1516a, nevertheless, in the alternative, you're making an argument that the trade court still abused its discretion in releasing certain particular types of information, maybe company names or attempted summaries of proprietary information. Is that right or wrong? Yes. No, we believe that the companies had every right to reasonably rely on this and... Well, I'm just talking about very specific types of information that you did challenge the trade court's decision to make public. Yes. So, that's what I'm trying to understand. I thought you had responded to an earlier question by Judge Dyke that really you were only just making legal arguments in the mattress appeal. No, no, and thank you for... But you have this additional argument, a more granular argument about specific pieces of information that you're objecting to, one of them being certain company names that were released and another one is, say, the attempt at summarizing proprietary information that you think actually didn't do enough. Yes, and thank you, Your Honor, for giving me the opportunity to clarify that. Yes, we did... And then if we were to agree with you on any of those things, then I guess what you would be seeking is an order for the trade court to amend its earlier order? Do you mean to go back and redact what's already...  No, the information's been out there now for some time, but it's the reliance on that order going forward that has caused us... That has caused significant problems and it continues to in the OTP case. And again, thank you, Your Honor, for giving me the opportunity to clarify. Yes, as you mentioned, we did discuss specific information, and I apologize for the confusion. We did discuss the specific information and identify what types of information was disclosed in the brief, and that included company names, information that should have been... Even though it was an aggregate, it was capable of disclosing company-specific information. So, yes, we did discuss that in there. And just in the phosphate case, you do want concrete directives from us, both about what the CIT is supposed to do with the still-sealed opinion in the phosphate case, and also what the CIT opinion, the one that's at issue here, ordered the ITC to do in the remand proceeding that it ordered, right? Yes, we'd like to have the March order where the court had gone through and said some information was entitled to protective treatment, but most of it was not, and included the order to correct the record. Then in April, when it issued the order under seal, it again repeated the order for the commission to correct the record, which we believe requires us to violate 1677F. And then the court, more recently, in its July order, specifically rejected the commission's request for redaction. Can I ask you a question about the regulation that has been discussed here? This is, I guess, 19 CFR 21-201.6. There's a subsection called Procedure for Submitting Business Information in Confidence, and it plays out, you have to, say, request permission and give various cover page information or something like that. Is that a procedure that applies to the response to questionnaires? Was it followed? No, the commission does not apply that to the questionnaires because the commission designs these. So the commission specifically creates these, knows exactly what information it's getting at. Is there something about this regulation that tells a reader that it is not applicable to questionnaires in anti-dumping proceedings? Not specifically, but if you consider that requirement and the requirements under 1677FA4B, they are, if you look at them in totality with the statute, and I'll try and wrap this up quickly, I see my time's up. Don't worry about the time. We'll let you know when we're done. If you look at them together, they don't lend themselves or suggest that a perfected request for confidential treatment is necessarily required. How can you say that when 1677FA4 seems to say specifically that the commission shall disclose information that's not marked confidential? That's not marked confidential, but the commission presumptively and preemptively treats the questionnaires as confidential. The question is, how do you reconcile that practice with the statute, which contemplates specific marking, confidentiality markings, and says you shall disclose information that's not marked confidential? And the questionnaires may have confidential information in them, but this seems to be inconsistent with an approach that doesn't require specific confidentiality markings. Actually, if you consider the statute as a whole, and in particular, if you look at the broad authority conferred to the commission under 1333... I'm looking at this specific language. No, I understand, but if I may, and I'm sorry, I did not mean to speak over you. If I may, I understand the question. But 1333 allows the commission broad discretion, for example, to go out and get... go to a company and say, you have to give us all your documents, we want to copy them now. It could get testimony. Those companies could not engage and be responsive. Just to be clear, there's nothing in 1333 about the issue of confidentiality, right? It's just a general authorization for the commission to investigate. That's correct. But a company could... I just don't understand how you can construe 1677F4 as not requiring the disclosure of information that's not marked confidential. It says it on its face. It does say that, but it also... it talks about a request. And here, the commission, if you consider the statute, and you consider the commission's broad authority, it doesn't necessarily lend itself to need to always rely on a request, which would impede its ability to do... to obtain all this information that it needs so badly within the time frame. So the commission sends out a questionnaire. Does the questionnaire say what you give us in response, we will treat as confidential? Yes. And then does the document, the answer, the response to the questionnaire, does that have anything on it that says this is confidential pursuant to the terms of the questionnaire? Yes, it does. It says that it... So would that fall outside or the directive of, I guess, 1677F... or is it A4? That says you're supposed to... shall disclose anonymized information. That's the first thing. And the second is information submitted not designated as proprietary by the person submitted. Are you arguing that that... that what's on the response to the questionnaire is a designation under that? Or I think you answered, Judge Dyke, that you were agreeing that it was not, but nevertheless, it's okay what we're doing. No, it is, it is, and thank you. It is designated. It is designated by the commission. The commission includes on the... But that's not what the statute says. It says it is by the person submitting it. It does, but again, these questionnaires are designed by the commission. They know what's in them. It's narrowly tailored to the scope. The information is by its very nature the type of information, and it's as defined under 201.6A. It is the information that is about company-specific operations that under 1677A... 1677F A4A, the commission cannot disclose in... unless it's an aggregate form that does not disclose individual operations. Okay, could maybe we turn to 1516?  And your theory that this, I guess, is designed to override the common law right of access, right? Yes, yes. There's nothing in the legislative history to suggest that, right? I'm sorry? There's nothing in the legislative history to suggest that. The legislative history actually does specifically talk about how 1516A is... it incontemplates disclosure under a protective order. And the thing... the court has talked about how the statute was written... No, but there's no mention in the legislative history of overcoming the common law right of access, right? No, but the statute, it had already... there was already no common law right of access when this was written, because the status quo at the time was almost no information. So what the... what Congress did... Almost no... that sentence sounded like it needed more words and no information. What? There was almost no disclosure. It was very limited, and that's exactly why Congress created and amended the statute to allow for robust protection with the issues of protective orders, but it mandated full disclosure of all the BPI, but it balanced it. So in doing that, Congress struck the balance between the interests of the people who... the companies who were giving their sensitive information to the Commission with the due process rights of companies appearing before them. So prior to that, though, was not the common law access rule where these documents were open to the public. The default had been less information was disclosed publicly, and there was very little information I think disclosed publicly, and almost no information disclosed to the parties. So that's why Congress wrote this. So the default was not common law right of access. The default was information is constrained. Somebody must have been one of the amici said that the Commission does have the power to  answer subpoena power. Why is that not sufficient? I can think of an answer, but I'd like to hear yours. Why is that not sufficient for the Commission to rely on? Yes. To do its job. This is going to impair the ability of the Commission to do the job. The subpoena power... the Commission would not be able to get the information that it needs within the time frame if it had to subpoena everything. Particularly in terms of preliminary phase investigations that are 45 days, the Commission couldn't issue a subpoena and get it enforced within that time, or it would be highly unlikely. And the voluntary... Yes. The voluntary submission is also incredibly important to get candid and complete responses. If the Commission is... You have to give blanket confidentiality treatment because it's too time-consuming to issue a  No. No. That's not it. The Commission preemptively designates these as BPI because, as I mentioned, it's in line with 201.6A as the Commission has defined BPI. It's consistent with 1677 FA4A. And also the consistency of treating it actually promotes transparency and helps the Commission to avoid inadvertent disclosures. And it sounds counterintuitive, but the more you have mixed designations, the more you're likely to have to redact the aggregate number. So, if you have four importers that reported their information, their aggregate number can be made public. But if you have mixed designations and, say, two said it's BPI, two said it's public, that aggregate number then has to be redacted. And the statute seems to contemplate that public information will not be properly treated as confidential, right? The statute, the overriding aspect of the statute is to ensure that the companies have control over their information. No, but it specifically refers to publicly available information being unwarranted confidentiality. In 1677 FB2. It does. It says that if the Commission were to challenge the designation, it could do so on the basis of, if it was publicly available. But the Commission can't overwrite it. So, if a company just disagrees, they can take their information back and the Commission can't do anything about that. And that's another reason why it doesn't lend itself to when you look at the statute as a whole, it doesn't lend itself to requiring a perfected request every single time information is obtained by the Commission and is properly designated as BPI. The withdrawal process could significantly and would significantly impede the Commission's ability to obtain the information that it needs because if they don't give them a BPI designation, they can take their information back. And under 201-6-3 they could actually evade a subpoena because they can withhold their information until a designation is granted in their favor. Okay, so why is it that we should read 15-16 as cabining the common law right of access when it seems to say that the courts can reveal information and it doesn't limit it to protective order situations? But it does in both the first sentence and the second sentence the first sentence says the confidential status shall be preserved. And in the second sentence it does say notwithstanding that sentence, but it still refers to it as confidential information. So it doesn't contemplate a change in that status. It says the court may disclose it, but it's still referring to it as confidential information. And it contemplates disclosure under an order with terms and conditions. Can I ask you a question on a different topic, though it came up recently. In the mattress case the CIT judge just put the information out there in public. Didn't do that in the phosphate case. Suppose we thought that some kind of notice is necessary. What do you think that notice or to whom should that notice be given? Is it enough to, for example, give notice to the commission who in turn can do what it thinks appropriate to get to put the producers the submitters of the the submitters of the information, particularly the domestic purchasers on notice that this information is proposed by the court to be made public hasn't yet been. Tell us what you think. And then the commission would essentially make its own decision or what? The problem with that is that the commission has voted. The record is closed and the commission has voted. I don't mean in the particular case. Oh, you mean in general. Right. If it's in litigation, obviously the commission has, the record is closed and the commission has voted. And under the unwarranted designation process, the commission has to give them the opportunity to take their information back if it doesn't think that the No, I guess I'm just talking I'm not talking now about the commission itself making things public. I'm now talking about what the CIT can do on the assumption that I know you disagree with the second sentence of 1516a authorizes the CIT maybe based on the common law right of access or whatever, sometimes to say certain information is going to be made public. On that assumption, I want to add an assumption that prepublication notice and an opportunity to address the proposed publication is necessary. To whom should that notice be given? I think generally in our court and in courts in general, sometimes information is submitted. The court thinks we really want to make this public. We do give the parties notice. Much of that information will not be the party's own information but have come into the possession of the party in discovery from somebody else. I think we generally just rely on the party to deal with who's the owner of that information. I'm trying to get a handle on it. The owner of the information is still whoever it belongs to. Whoever provided the information, they are the owner. The question I think is who gets the notice that the information is potentially going to be disclosed and who's given the opportunity to object? In our court we rely on the parties. We say, here's the information that we propose to disclose. Please tell us whether it's confidential. We don't try to go to the originator of the information. We rely on the parties to object and to perform their obligations. Is that kind of notice sufficient in this context or should it be different? I think that's the question. Thank you for clarifying. The notice to the parties would not be... The commission knows who the questionnaire respondents were. It has their information. It still could not provide them with the process before a BPI designation is withdrawn that Congress has provided under 1677F because the record is closed and the commission has voted. Why can't the commission if it has confidential information received through questionnaires notify the companies that submitted the information that there's a proposal to disclose that and do they object? Why can't we rely on the commission to do that the way we would in a case in this court? Thank you. The commission would be the obvious party to do that.  would have it would create a significant amount of problems from the commission because if the parties object to their information being made public they are as Congress intended supposed to be able to pull that information back out of the record. That is an assurance that the commission has given to all the parties. We're assuming I think in the context of this question that we reject that proposition. There is no blanket questionnaire confidentiality that has to be done on an item by item basis and the question is when there are objections to be addressed to particular items why can't we rely on the commission to make the objections rather than for the courts to have to contact the questionnaire submitters? The commission would be the obvious party if you're looking to a party but if I may just clarify it's two different things. The questionnaire being presumptively designated is one thing. The process under the unwarranted designation provision of 1677F, Congress provided that and Congress provided that before companies information is going to be made public and a BPI designation is withdrawn they are to be given the opportunity to pull that information from the record. So it's separate and apart. The question assumes we lose that point. The 1677F does not provide that process? It doesn't control what the CIT can do. The second sentence of 1516a. I see. Thank you for clarifying. In that case it would be it would have an incredibly chilling effect on the commission's ability. It may be that after an opinion comes out and says that and it becomes the law then the questionnaire maybe should say the commission will proceed internally in accordance with 1677F etc. But if this goes to litigation the court of international trade has authority to disclose information and you will receive notice if the CIT proposes to do that. I know that's a more complicated instruction and maybe some potential respondents on the questionnaire will say no thank you I'm not going to cooperate. That absolutely would be the case. The commission relies so heavily on the ability to obtain information voluntarily from these various market participants. In other areas of the commission's jurisdiction there are specific confidentiality markings required and I'm not aware that there's a failure to cooperate. If you're referring to 337 that's more akin to traditional litigation. You have two parties that are coming before and they want to adjudicate their issue. In Title 7 anti-dumping and countervailing duty investigations the commission is gathering everyone's information in a specifically defined market. Many of whom are not parties to the proceedings and they are just being swept into this. Is that not true in 337 proceedings in deciding whether there's some of the requirements for action under 337? The effect on the domestic industry if you don't survey non-parties? I don't practice 337 so my knowledge is very limited. There is some aspect of that but it's a very different structure than this. This is the commission going out and trying to obtain detailed information from everyone in the market and trying to gather all of their information. Interestingly, I don't read the amicus briefs on your side as suggesting that. I read those amicus briefs as suggesting that what's important is to give an opportunity to objective disclosure of confidential information. I don't read them as saying that the blanket coverage is essential. The ITC TLA certainly did focus on notice and consent but CISA did talk a lot about how this process of being able to assure their clients that this information is going to be protected is not just important, it's vital and that's how they get their clients to cooperate and turn over information. Okay, I think for the moment we're done. We'll give you three minutes for rebuttal. Thank you. We'll hear from Mr. Dewey I guess is first. Judge Steit, can I please the court? Andrew Dewey, a court-appointed amicus for only the mattress case. Judge Toronto, if I could turn to your jurisdictional question. I honestly hadn't thought of it before the hearing but I believe that the commission's appeal is timely in the mattress case because it is the DPI denial decision that is what they are appealing from. I think a lot of odd things would happen if we say the clock starts running at the merits decision point because for instance one possibility is that there's a mistake that the court just simply issued the public version, I mean the private version when it meant to issue only the public version. Also, one possibility would be if the court takes longer than 60 days to rule on the DPI denial decision. Imagine that the court the trade court in this case says, you've convinced me, redactions are going to happen. You have this situation where there would be a pending appeal to this court even though there was actually no agreement. I think when we're dealing with the exception to mootness, we're talking about a challenged action and I don't think that there was a challenged action in this case until there was this deliberate action by the trade court saying, I want this disclosed. Well, I'm not sure that's quite right. I mean, the damage was done on December 19th. True, but that gets into mootness, right? And I think we're dealing with an exception to mootness. I wasn't asking about mootness or standing. I was just asking about timeliness under, what is it, 28 AC 2107, is it? The 60 day rule. Sure, but I just don't think that from the commission's perspective the damage was done at that point because I don't think the commission would feel aggrieved if it was just simply a mistake on the part of the trade court to issue that as opposed to the deliberate action. It's that deliberate action that has the capable repetition aspect to it. I'd be happy to provide additional briefing if it would be helpful. Could you address the question of whether you agree that there ought to be an opportunity for the commission and the parties to object before the release of the information? It seems to be... Well, there was. In both of these cases, there was such an opportunity. There were hearings in both cases and the trade court offered the parties and the commission an opportunity to talk about what would be in the public section of the hearing and what would be in the private closed door part of the hearing. And that will be in any trade case. Your description of what happened doesn't correspond to my recollection. Yes, there was a hearing in the phosphate case. I don't recall that there was a hearing on confidentiality in the mattress case. There was. I believe that at the beginning of the hearing in CVB that the judge offered the parties an opportunity to discuss do you want to have anything in private? Let's start with public and then... When was this hearing? I'm sorry, I don't have... After or before December 19th? Oh, way before. This was like months before. This was like the main hearing that you have in a Title VII case where all the briefing is done and then we argue about whether or not the ITC has substantial evidence. That's going to be the typical situation. I think that's standard practice in Title VII cases. For instance, if the commission ahead of such a hearing could bring maybe a motion and eliminate and ask the court here are some very specific things we don't want discussed in the public section of the hearing and maybe the judge agrees or disagrees. If the judge disagrees then the commission could potentially take a petition for writ to this court right away. So why shouldn't the trade court follow the procedure that we follow here which is putting 5G aside which is to say we've written the opinion, here's the information it's marked confidential that we proposed to disclose, please let us know if it's confidential. So there's an opportunity to object before the release. Why shouldn't the same thing happen with CIP? Procedurally I think the question is whether it's an abuse of discretion not to do that. I'm thinking back to the Unilop case Judge Toronto might recall we were talking about whether the Northern District of California had an obligation to give a party seeking ceiling a second chance after an overbroad request and I think the panel agreed that that might be a good practice but it's a whole different thing to say it's an abuse of discretion not to have that and I think I would say about this case I don't think it's an abuse of discretion not to have these kinds of procedures that your Honor is talking about. You wouldn't necessarily have the same issue in the pre-December 19th hearing where there's a discussion about what the merits are going to be like and the parties in particular are saying the following we should keep confidential and then later when the judge has drafted an opinion and now has a list of 12 specific things that in this case he wants to put into the public domain it doesn't feel quite right that everybody was on notice back at the hearing at the higher level of topics. Well there might be exceptional cases where as your Honor is contemplating that we have something new something that wasn't specifically addressed In particular you don't have summaries written yet. Does the summary sufficiently anonymize the information I wouldn't think that the discussion about public versus closed hearing would be at that level because you are definitely going to be talking about the specific numbers. I suppose that's true but I think when it comes to questionnaire responses which is the big problem here the trade court in the mattress case had 800 some pages of responses and the trade court is being told by the commission all of it, every single page, every part of every page is BPI. I think if we can get the commission to do what the 1677F contemplates which is actually have the submitter designate things as proprietary then we're going to be dealing with a much smaller body of BPI. Okay but I guess maybe the question wasn't clear. I think the assumption is that you win on that point that the questionnaires can't be more confidential we're now dealing with the question whether specific information that is more confidential can be disclosed or not under those circumstances shouldn't the court give the parties an opportunity to object before the information is disclosed. I think that would be a good practice and it could be done again I think it could be done ahead of There's no disadvantage to doing it either right? Well I think there's good reason to do it before the public hearing and to be clear that any discussion of what is really BPI is going to be reserved for the private hearing and that seems to me a situation where a very high percentage of cases where it's going to be clear there's a problem here and a disagreement between the CIT judge and the commissioner or with a third party but it seems like that's going to be that's going to come to a head at that point. Okay I want you to address the merits Sure I'm going to get back to the earlier questions about so if you look at in the Mattis case appendix pages 619 to 622 you can see four pages where the commission asked for the specific 44 different redactions but what you see on the right side there is nothing like any kind of concrete harm that would flow from disclosure you see boilerplate language essentially saying hey that was in a questionnaire response there's no particularized showing of any harm that would flow to any third party and I think it's also important to look in the Mattis case about what we did not see yes we did see the parties to that case join the motion to redact but that's the last we ever heard from those parties CBB appealed to this court in 24 1504 I think it was and in that case we had an appellate brief from CBB they didn't say a word about the redaction issue and then we had the intervener's defendants brief the case there too these were supposedly the parties harmed by disclosure and they didn't say anything about the redaction motion or any denial so I think it's odd that we don't have anything from the supposedly aggrieved companies complaining about it I think I've lost the thread a little bit so I'm thinking mostly about the purchasers who are not parties who answered questionnaires it's true the purchasers were not parties but the importer CBB was there they were supposedly their information was supposedly wrongfully disclosed and then the domestic producers were party to the case party to the appeal and they didn't say anything about it they were supposedly harmed but they didn't say anything about it and also when Judge Baden issued that decision in December of 2023 that data was about at least 4 years old in a rapidly changing industry these box mattresses upended this whole mattress industry and so that data is 4 years old so there's really reason to doubt that any of these companies are really that concerned but also because remember that the trade court did not disclose hard numbers of production and I think it's really important to look at appendix 620 you see a key paragraph there where Judge Baden explains the basis of his decision which is this industry specialization he's saying that flat pack mattress companies produce hardly any box mattresses and he explains he names the companies, the top 3 Corsicana, Serta-Simmons, Tempest-Seeley and he says if you look at those top 3 their production ratios are wildly disproportionate 63 to 1 74 to 1, 83 to 1 and so that specialization is the basis for his refusal to accept the primary grounds for imposing duties and so he ultimately went with the alternative argument that the commission presented but you need to understand that those disclosures to understand his opinion and you also need to see those disclosures to understand his accusation that the commission was being fast and loose with statistics and so when it comes down to assuming that the court rejects the blanket idea that 1516 doesn't give the court any disclosure of discretion once we get past that we get into the balancing act of this court's precedence in Rule 28d in Dupuy and Unilock and the balancing I think of it as ledgers on two sides of the ledger the public aspect, public interest the need for the judicial branch for legitimacy and I think there's varying levels of concern here. There's all judicial records, there's judicial records that are admitted into evidence at trial or attached to a motion and I think we are at the highest level in this case we are at a level that the DC circuit touched on in Metlife and Leopold because now we're talking about the content of a judicial decision. This is something where we've had multiple centuries of tradition of public access to it and so I think it would be it would take the most compelling showing imaginable to say to an Article III court you may not put this into your judicial decision even if it's at the factual center of your case and then look at the other side here, the harm. We have no evidence at all. There were no declarations submitted in support of the joint motion for redactions and as I say we don't even have complaints by some of the US producers when they had an opportunity to complain. They didn't join this appeal. So I think that in this case you can build on your free precedence in public access and then I think you can learn a lot from how the DC circuit approached this even higher level of concern in Leopold and Metlife. Any questions? Thank you Mr. Newton. Ms. Moss? Good morning Your Honor. May I please support Alex Moss amicus for presenting the CIT decision. I'm happy to start with questions. I'm also happy to touch briefly on the question of the notice because I think maybe a practical take on this is remembering that the CIT didn't get any redactions. So it had an open hearing and then it got lots of briefs with no redactions, no motions to seal. And then it released an opinion where it clearly didn't think that any information was even close to the line. Whether there might be a situation where it would be appropriate for a court to have a rule about blanket notice, I just don't think that this is the case because it's such an unusual situation where I think the judge... What do you mean by before the opinion the CIT didn't get any redactions? They don't submit redactions. The ITC takes the position that no requests for redactions are necessary. They can just have it on the page. Oh, that's what you mean. Insufficiently bracketed. Yes, they do redactions right as brackets. But so in my view, and I've seen this happen in practice where you submit something and it's stamped on the top but you read it and it's like this is public information and then the court says, you're right, this is public information. So I just see this as a situation like that where it just doesn't kind of raise the question of notice in the absolute sense. So I think that if it were, I think it would be a different case if there had been redactions like you have and then the court is seeing this and it's on notice that something is confidential and it's the folks that have been participating with the rules. The sort of background for both of these is that the CIT's actual local rules have just been completely ignored. You and I guess we are in this unusual situation where everybody agrees that there is absolutely nothing to be done about the December 19th opinion. It's history and published history. And so the question is looking forward, what should the rules of the road be about giving an opportunity to object before something becomes public. And I just think it's hard to answer that question given how completely the rules have been violated at every step by the ITC leading up to that point. If they had had you know, it would be a very different situation if there had been brackets and requests to seal at any point provided, any notice of law. Didn't they come back and do an amended version with brackets? Not before the December decision. No, I mean after the December decision. They may well have, but the point is about sort of whether, my point is that this just isn't the case that raises the question about whether notice was necessary. Because here there have been so many violations of rules that I think that this isn't it doesn't raise that question thoroughly and it would be better to wait for a different case for that. We can also turn to OCP where this issue doesn't present, of course the issue of timeliness makes the first case one that this court can decide, but in the real core issue here is who controls what the court tells the public? Is it the court? Or is it the agency? It has to be the court. It has always been the court. When the court is reviewing an agency the agency doesn't get to decide what's kept secret. If that were the case, there would be no mechanism for error correction there'd be no mechanism for accountability. Congress knows that. Every piece of legislative history in this record Congress does the same thing. It recognizes the court's authority and invokes it. In 1516A it says the court may disclose. In the legislative history about the protective order it says where the court determines it would be appropriate. In 1987 Congress amended the law. There it turned out that the ITC was being and this is actually the situation the status quo they're talking about before 1987 when the ITC refused protective orders even to the parties during the investigation. Congress said that's not okay. The parties can't defend themselves fairly. It said look, actually the court when it's getting the cases, it's releasing information. This is after 1516A. What did Congress do? Did it say the courts are violating the ITC's blanket discretion to do everything in secret? No. It said that's how it should work and exceptionally they gave the court authority over the protective orders during the investigation because it was so problematic what the ITC was doing and Congress again said courts, you do access, you're doing it well, let's extend it to the investigation. That to me is a consistent art and there's a lot of language about a scheme but there is one consistent trend which is through this case and it's through our country's history which is that we trust the courts to do access to courts. Period. You all know better than anyone why that's so fundamental but the public has to trust the courts for them to be legitimate and taking anything out of the judicial process putting anything in secret is going to make it more difficult for the public to trust. Can you provide some I want to use the word comfort on the policy point which has some force on its face that if there is even this amount of uncertainty under common law access standards at the IT level ITC will find it harder to do its job either to get some information or to get it in time to make the decisions that Congress has told when it has to make the decisions. I would look at what Congress said in the legislative history to the 1987 amendments. The same arguments were made we're not going to be able to get information if we have to give protective orders to all the parties. And Congress said it's legitimate we want you to get the information you need. So we're going to give you subpoena powers and in the legislative history they cite cases to say how willing courts are to grant those subpoenas and it says you've got adverse inferences available and we're going to give you really powerful sanctions to punish any violations of protective orders. We are not going to restrict access to do that. That's the line. So the policy point Congress has already rejected that argument and it seems as though the whole purpose of that amendment has been disregarded because it seems like what's happened is that it turns out despite objecting to protective orders it seems that the practice is now to grant protective orders all the time and to designate as confidential entire questionnaires which effectively ensures that public information is being designated as confidential. This puts the entire bar at a constant threat of sanctions and importantly the sanctions proceedings that the ITC does are entirely secret and unappealable. In the tiny little summaries we have in the Federal Register two of the cases say that there were dissenters that the information was already publicly available that they were accused of disclosing and again the summary is very brief. There's no reason ITC wasn't convinced by that argument. This is what's happened clearly since 1987. This abuse has been going on. It's been apparently going on for decades and it's really unusual to judge Gacy's credit that it came out to this point. I think it only came out really because of that inadvertent disclosure of the December opinion. That's really what seems to have been the catalyst for all of this and if it hadn't been for that we really don't know because it's an entirely closed loop. The ITC designates the secrets it's a protective order forces nobody else to disclose it and then according to the ITC the court has no authority I mean this is really about the court's authority and it seems that at every turn the ITC whether it's the 60 day deadline for appeals whether it's the CIT's rules for sealing at every point it seems that they don't think that the rules apply to them but the court has the authority over what is accessible in court it has always been that way and if the executive agency were going to control what the court can tell people when it's reviewing that agency it can prevent the public from ever seeing it in states it can prevent public accountability and we've heard a lot about the balancing of the respondents and the parties but in my view Congress is thinking about the public we have an ITC to do trade policy fairly and the public has an interest in making sure the agency works which means we have a powerful interest in making sure it's errors can be corrected. That is what courts are for and it's crucial that those errors when they're revealed the courts be the ones to decide the public trusts the courts and the courts need the public's trust. This relationship is sacrosanct the ITC is trying to dismember it and if the CIT does the right thing I trust that you will but I'm happy to answer if there are any other questions Thank you Ms. Moss Ms. McNamara you have three minutes Thank you The commission is not trying to hide things it's not trying to operate in secret and in fact it doesn't it's just trying to do its job and it needs the information from these companies to be able to do that it's essential and where there's this claim that there's no accountability there is in fact accountability the people who have access to the BPI also have access to the public records they can see exactly what's being redacted and what's being made public if they have an objection they can make that and there's this issue of is there no harm and Amiki keeps saying there's no harm there is harm, the commission is harmed CIPA has joined and said that there is a reason they're here because the commission is harmed the ITC, TLA I understand it's a notice and comment but this is doing real harm to the commission's ability to do its job and so excuse me I lost my train of thought the commission is absolutely being harmed and it is held accountable Can you comment on the 1987 legislative history to which Ms. Moss referred the about subpoena power Yes it does say that the commission has subpoena power but it also says the best insurance that the ITC will be able to obtain the information it needs for its investigation is its reputation for strictly maintaining the confidentiality Yeah but the legislation contemplated individualized marking not blanket claims of confidentiality for entire documents it it provided that companies if they're requesting confidential treatment that they follow the procedures identify specific information that they go through and do those procedures but at the same time it's impossible for the broad authority that's been conferred on the commission to be reconciled with strict adherence with that because the commission won't be able to get the information that it needs and it certainly is not going to make information public on a technicality the commission is absolutely not going to do that the other point that I wanted to make if I may is the Ms. Moss was just saying both of them said that the information should have been brought up at the hearing and they should have brought that up and that's when these issues should have been raised this case involves 53 domestic producers 49 importers 16 foreign producers and 22 purchasers they were not parties to the litigation and certainly not participating and in terms of what's being filed and I'll just briefly make this last point in terms of what's being filed you can look at the docket and particularly pages appendix 87 and 88 and you will see that the parties were submitting confidential documents they were submitting confidential briefs so the idea that there was no awareness that there was confidential information in this record at issue is not borne out by what the parties were doing okay I think we're out of time thank you thank you all counsel thank you Nikki for participating in the case